UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TRISTAN SQUERI, MADELINE McCLAIN, and GEORGE O'DEA, individually, and on behalf of all others similarly situated, | * * * * * | |
| Plaintiffs | * * | |
| v. | * * * * | COMPLAINT AND DEMAND FOR TRIAL BY JURY |
| | * | C.A. No.  1:18-cv-12438 |
| MOUNT IDA COLLEGE, THE MOUNT IDA COLLEGE BOARD OF TRUTEES, BARRY BROWN, individually and as a representative of Mount Ida College, CARMIN C. REISS, individually and as a representative of the Mount Ida College Board of Trustees, JASON POTTS, individually and as a representative of Mount Ida College, JEFF CUTTING individually and as a representative of Mount Ida College, and RON AKIE, Individually and as a representative of Mount Ida College, | * * * * * * * * * * * * * * * | |
| Defendants | * | |

## I. INTRODUCTION

1.       Without notice to its student population and their families, Defendant Mount Ida College (hereinafter "Mount Ida") abruptly closed its doors in May of 2018. The fallout was catastrophic.  Among numerous consequences, students were faced with finding an alternative institution to meet their educational goals to which to transfer – a daunting task given that transfer deadlines for most institutions had passed or were imminent; many students were left with degree programs that were discontinued or credits that could not be transferred; and many students lost their scholarships and other forms of financial aid. This could have been avoided. Yet, by closing

abruptly, Mount Ida denied its students the opportunity to continue with their bargained for education, and their actions prevented some students from enrolling in other institutions of higher education or pursuing their intended degrees altogether.

2.      One of the Defendants, Carmin C. Reiss – the Chairwoman of Mount Ida's Board of Trustees – testified under oath that she was aware as early as 2014 that Mount Ida was facing financial difficulties that ultimately led to its closure.   Despite this knowledge, none of the Defendants disclosed Mount Ida's financial status to its students. As stated by Reiss: "did we go out and announce: 'hello interested students we're teetering on the brink of insolvency, but come on in?'  No, we did not do that."

3.      According to Reiss, this omission was intentional, as it was the Defendants' understanding that "the public disclosure by a college that it is facing financial difficulties is a self-fulling prophecy of its demise."  In other words, the Defendants intentionally concealed the truth from its students because they knew their students would seize this information and ultimately make an informed decision to enroll elsewhere, seek a transfer, or take some other action to avoid being harmed by the school's inevitable closure.

4.      As stated by the Office of Attorney General Maura Healy, "[Mount Ida's] closure has caused real harm to students and families.[1]"

5.      The Defendants had several opportunities to disclose the severity of Mount Ida's impending insolvency to its students.  Most notably, Mount Ida had the opportunity to fully explain the situation when it believed it reached a merger deal with nearby Lasell College.  Instead of disclosing the reason for merger at that time (i.e., that Mount Ida  was on the brink of bankruptcy), Mount Ida instead made numerous false representations, including without limitation, that the

---

[1] Stated in a May 15, 2018 letter from the Office of the Attorney General to Holland & Knight LLP and Mount Ida College regarding the Mount Ida College Asset Transfer.

merger was to strengthen and consolidate both its and Lasell's positions as institutions.

6.      The deal with Lasell ultimately failed. Instead, Mount Ida entered into an agreement to sell its land to UMass and close the college. As part of this deal, Mount Ida funneled its students to UMass Dartmouth, illegally providing UMass with sensitive student financial and academic information, which was inexplicably provided as part of a land acquisition.

7.      The sudden closure of Mount Ida deprived enrolled and prospective students of their ability to meaningfully consider alternate schools, and Mount Ida knew this. It was exactly when the students were most vulnerable when Mount Ida released its students' private information to UMass Dartmouth, allowing UMass Dartmouth to approach each individual student armed with knowledge of their specific finances, grades, awards, and majors. In effect, Mount Ida sold its students, at a discount, to UMass Dartmouth, as an incentive in the land transaction.

8.      This Class Action lawsuit arises out of this, and other unlawful, deceptive, and fraudulent practices and actions of Mount Ida College, the Mount Ida College Board of Trustees (hereinafter "Board of Trustees"), Mount Ida's President and other academic officers relating to Mount Ida's sudden closure and the resulting harm suffered by its students.

## II. PARTIES

9.      The Plaintiff, Tristan Squeri, is an individual residing in Burlington, Massachusetts, and a former student at Mount Ida. Tristan enrolled at Mount Ida in 2015, seeking his Bachelor of Science in Graphic Design. He now attends Lesley University where he is seeking an alternative degree of a Bachelor of Fine Arts in Graphic Design and  will be required to enroll in extra semesters should he continue to pursue his intended minor in animation.

10.      The Plaintiff, Madeline McClain, is an individual residing in Westampton, New

Jersey, and a student accepted into the 2018 class at Mount Ida. Madeline expected to enroll at Mount Ida in 2018 in the Bachelor of Science in Veterinary Technology program. She now attends Hartwick College in New York and is pursuing a degree in Biology. She will require additional semesters of schooling to achieve the same veterinary focused education that she would have received at Mount Ida for less money.

11.     The Plaintiff, George O'Dea, is an individual residing in Brookline, Massachusetts, and a former student at Mount Ida. George enrolled at Mount Ida in the Bachelor of Science in Funeral Service program in 2016. He now attends Cape Cod Community College's Associate of Science in Funeral Service Program, which holds classes at Bridgewater State University.

12.     The Defendant, Mount Ida College, is an institution of higher education which has recently ceased operations, with a principal office located at 124 Washington Street, Foxborough, Massachusetts 02035.

13.     The Defendant, The Mount Ida College Board of Trustees is the governing body of Mount Ida College, with a principal office located at 124 Washington Street, Foxborough, Massachusetts 02035.

14.     The Defendant, Barry Brown, is an individual residing in West Newton, Massachusetts, and is  the former President of Mount Ida.

15.     The Defendant, Carmin C. Reiss, is an individual residing in Concord, Massachusetts, and is a member of The Mount Ida College Board of Trustees.  At the time of Mount Ida's closure, Reiss was the Chairwoman of the Board of Trustees.

16.     The Defendant, Jason Potts, is an individual residing in Boston, Massachusetts, and is the former Vice President, CFO and Treasurer of Mount Ida. In these positions, Jason

Potts was responsible for the school's finances, facilities, and business services. Upon information and belief, he was responsible for the capital plans, debt managements, and the cash flow of the school.

17.     The Defendant, Jeff Cutting, is an individual residing in Sudbury, Massachusetts, and is the former Vice President of Enrollment Management and Dean of Admissions at Mount Ida, as well as a member of the president's cabinet. In these positions, Jeff Cutting was responsible, *inter alia*: (1) leading the transformation of enrollment at Mount Ida College; (2) overseeing staff activities such as marketing, recruitment and admission; and (3) chairing the 2015 Strategic Enrollment Planning process.

18.     The Defendant, Ron Akie, is an individual residing in Boston, Massachusetts and is the former Chief Academic Officer and Provost at Mount Ida.

### III. JURISDICTION AND VENUE

19.     The jurisdiction of this Court is lawful pursuant to 28 U.S.C., § 1332(d).  The amount-in-controversy exceeds $5,000,000.00 and minimal diversity exists between the parties.

20.     Venue is proper in this District pursuant to 28 U.S.C., § 1391(a) because a substantial part of the events giving rise to the claim occurred in this District.

### IV. FACTS COMMON TO ALL COUNTS

21.     In as early as 2014, Mount Ida was in financial distress and teetering on insolvency. The Defendants feared that it would be left with no choice but to file for bankruptcy.

22.     In as early as 2014, the Defendants knew that Mount Ida was in financial distress and teetering on insolvency.

23.     Since as early as 2014, the Defendants failed to inform its students and prospective students of Mount Ida's financial distress and impending insolvency.

24.     Mount Ida offered at least 15 separate categories of merit based scholarships ranging from approximately $1,000.00 to $27,000.00 per student annually, with similar awards persisting through all times relevant to this complaint.

25.     Mount Ida's merit based scholarships were automatically awarded to students at the time of admittance.

26.     In 2017, the Defendants reported to the New England Association of Schools and Colleges on Institutions of Higher Education ("NEASC") *inter alia:*

      a.    their success in achieving enrollment goals and multi-year financial projections;

      b.    their success toward achieving a break-even operating budget;

      c.    that Mount Ida was in full compliance with its debt obligations;

      d.    that Mount Ida was financially stable; and

      e.    that they were confident that Mount Ida would raise sufficient funds to meet its liquidity needs.

27.     In 2017, the Defendants reported to NEASC that Mount Ida communicates timely and accurately with students, prospective students and the public.[2]

28.     During all times relevant to this complaint, while Defendants were actively concealing the true nature of Mount Ida's financial difficulties from its students, the Defendants were also falsely holding Mount Ida out as a financially viable institution to NEASC, among others.

29.     On or about February 24, 2018, Mount Ida publicly announced a potential merger with Lasell College. No mention of financial distress was made in the announcement.

30.     The Defendants announced to students that the purpose of the merger with Lasell

---

[2]  This statement is demonstrably false in light of Reiss' testimony that they had not accurately communicated their financial distress to its students.

College was to strengthen and consolidate both Lasell's and Mount Ida's positions as institutions, create a more robust learning experience by taking advantage of the distinct programs of each institution, and add academic depth to Mount Ida's tradition of small class and faculty mentorship. Again, the Defendants failed to mention that Mount Ida was in financial distress, that it was teetering on insolvency, or that it was seriously contemplating bankruptcy.

31.    On or about March 21, 2018, the Defendants rejected a final merger agreement presented by Lasell College.

32.    On or about March 23, 2018, the Defendants, by way of email, announced to the members of the Mount Ida community, that negotiations with Lasell College had ended. President Barry Brown assured students that Mount Ida remained a top 30 regional school and made no reference to the financial distress of the college.  Similar representations were made by the other individual Defendants named in this complaint, including the CFO, provost, and dean of admissions.

33.    Upon information and belief, while Brown and the other individual Defendants were assuring students that Mount Ida remained viable, they were simultaneously concealing the fact that Mount Ida was already seriously engaged in discussions with the University of Massachusetts system to sell its land and shutter the college.

34.    In the weeks leading up to the eventual closing of Mount Ida, Mount Ida had been accepting new students, offering substantial scholarships to new students, and outwardly proceeding as usual to the beginning of a new fall term, with no mention of the college's financial distress.

35.    On or about April 6, 2018, the Defendants, via e-mail from Brown, announced to the enrolled students of Mount Ida that they had reached an agreement with the University of

Massachusetts, whereby the Newton campus would be acquired by UMass Amherst (hereinafter the "April 6th Email").

36.     The April 6th Email did not clearly explain that Mount Ida was closing and, notwithstanding language that current students would be accepted into UMass Dartmouth, left students concerned and confused, with nowhere to turn for direction. Even upon further inquiry to the college, they received no clear answers about their educational future.

37.     In the days immediately following the April 6th Email, packages containing the following were made available to enrolled students of Mount Ida:

      a.     A pamphlet entitled "The UMass Dartmouth Guarantee to Mount Ida Students;"

      b.     A letter from Robert Andrea, Associate Vice Chancellor for Enrollment Management for UMass Dartmouth, containing the enrolled student's name, major, and estimated credits;

      c.      The student's transcript;

      d.     A comparison of Mount Ida and UMass Dartmouth's financial aid to the student;[3] and

      e.     A Consent to Release Educational Records form (hereinafter collectively the "Mount Ida Packet").

38.     Prior to the Mount Ida Packet being printed, students of Mount Ida were not asked to sign, nor did they sign, any Consent to Release Educational Records.  No other form of consent (express or implied) was provided by any of the Plaintiffs to Mount Ida to release these confidential and private records to UMass Dartmouth.

39.     On or about April 25, 2018, the Defendants approved the term sheet regarding the sale of Mount Ida's Newton campus to the University of Massachusetts Building Authority.

---

[3] The letters from Andrea, academic transcripts, and financial aid comparisons were all improperly disclosed to UMass Dartmouth by Mount Ida, in violation of the Family Educational Rights and Privacy Act and G. L. c. 214, § 1B.

40.     On or about April 26, 2018, the University of Massachusetts Board of Trustees approved the term sheet regarding the sale of Mount Ida's Newton campus.

41.     On May 16, 2018, the Purchase and Sale Agreement for the sale of Mount Ida's Newton campus was signed.    Up until that point, the deal had not yet been consummated and there was no lawful reason for UMass Dartmouth to possess private educational and financial aid information of Mount Ida's student population.

42.     Mount Ida officially closed as of May 17, 2018.

43.     As a result of Mount Ida's closure with no substantive prior notice to students, many unique opportunities in degrees, experience and education were lost to Mount Ida students.

44.     As a result of the closure, the Plaintiffs and members of the putative Class have been denied their contracted right to receive an education in the degree field for which they bargained.

45.     As a result of the timing of the closure, the Plaintiffs and members of the putative Class, were deprived of a meaningful ability to plan and prepare for enrollment at another institution.

46.     As a result of the closure, the Plaintiffs and members of the putative Class, were caused and continue to suffer significant harm.

47.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and G. L. c. 93A, § 9(2) on behalf of a class defined as:

> "All students and prospective students of Mount Ida College at the time Mount Ida College closed."[4]

---

[4] This is a preliminary definition of the Class.  The Plaintiffs expressly reserve the right to modify or amend the Class, or to create multiple classes or subclasses, as appropriate, when this case reaches the class certification stage of the litigation.

48.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.     Numerosity – FED. R. CIV. P. 23(a)(1).  The Class is so numerous that individual joinder of all Class members is impracticable.  Plaintiffs believe that there are more than 1,400 Class members.  The precise number of Class members and their addresses are unknown to Plaintiffs, but may be ascertained from Mount Ida's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

50.     Commonality and Predominance – FED. R. CIV. P. 23(a)(2).  This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members.  All Class members were subject to the same deception, and breach of privacy, and all involve common questions of law and fact.

51.     Typicality – FED. R. CIV. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all Class members were similarly injured through the omissions of material facts and other fraudulent statements regarding Mount Ida's financial viability, and all Class members have the same claims against the Defendants.

52.     Adequacy of Representation – FED. R. CIV. P. 23(a)(4) and G. L. c. 93A, § 9(2). Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; they have retained counsel competent and experienced in education law and class action litigation, and the Plaintiffs intend to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and counsel.

53.     Similarly Situated and Injured Persons – G. L. c. 93A, § 9(2).  The proposed Class consists of students who have suffered the same injury as the Plaintiffs and who, for the reasons stated above, are similarly situated to each other and to the Plaintiffs.

54.     Superiority – FED. R. CIV. P. 23(b).  A class action is superior to any other available methods for fairly and efficiently adjudicating this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Defendants, so it would be impracticable for Class members to individually seek redress for the Defendants' wrongful conduct.  Even if the Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## (Violation of Privacy, G. L. c. 214, § 1B)

55.     The Plaintiffs and the Class repeat, reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 54 of this Complaint.

56.     The Plaintiffs and the Class placed their trust in the Defendants to safeguard their sensitive and private financial and academic information.

57.     Prior to April 6, 2018, Defendants provided UMass Dartmouth with Plaintiffs' and members of the Class' sensitive and private student academic data without prior authorization, in violation of the Family Educational Rights and Privacy Act (20 U.S.C., § 1232g) and G. L. c. 214, § 1B.

58.     The dissemination of the Plaintiffs' and members of the Class's private information to UMass Dartmouth exposed the Plaintiffs and Class members to unwanted solicitation by UMass Dartmouth during a time of crisis and turmoil.

59.     The dissemination of the Plaintiffs' and Class members' private information to UMass Dartmouth exposed and continues to expose the Plaintiffs and members of the Class to data breaches.

60.     The dissemination of the Plaintiffs' and Class members' private information to UMass Dartmouth without prior consent was not warranted under the circumstances.

61.     The Plaintiffs' and members of the Class's consent for the dissemination of their sensitive and private student financial and academic information could have been timely obtained prior to the unauthorized dissemination of such information.

62.     The dissemination of the Plaintiffs' and Class members' sensitive and private student financial and academic information was not in the interest of the student Plaintiffs and members of the Class, but was for the convenience of the Defendants.

WHEREFORE, the Plaintiffs and members of the Class pray that judgment be entered against the Defendants in an amount that will fairly and adequately compensate them for their damages and such other relief as this Honorable Court may deem appropriate.

## COUNT II
### (Fraud)

63.     The Plaintiffs and the Class repeat, reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 62 of this Complaint.

64.     The Defendants knew of the financial distress of Mount Ida by as early as 2014. The Defendants knew that Mount Ida was teetering on insolvency and that bankruptcy was seriously being considered.

65.     The Defendants, knowing that Mount Ida was in financial distress, continued to hold Mount Ida out as a viable institution by:

      a.     accepting new students;

      b.     advertising substantial merit-based scholarships;

      c.     providing enrolled students with substantial merit-based scholarships;

      d.     scheduling admitted students days;

      e.     reporting to the NEASC that Mount Ida was financially sound;

      f.     failing to report to the Department of Higher Education their financial distress;

      g.     failing to properly characterize the merger talks with Lasell College;

      h.     advertising and engaging with incoming students for the 2018-2019 year; and

      i.     issuing acceptance letters to incoming students.

66.     The Defendants knew that Mount Ida was not financially viable, yet they continued to offer enrollment up until all deadlines for admissions to other colleges had passed or were imminent.

67.     The Defendants knew that Mount Ida was not financially viable, yet they sought enrollment deposits through emails issued by the Dean of Admissions, representing that payment of the fee would secure a spot in the fall 2018 entering class.

68.     On March 23, 2018, when Mount Ida terminated merger discussions with Lasell College, Barry Brown and the other Defendants assured students that Mount Ida remained a top 30 school in the region and that they would continue to examine options moving forward to ensure the future of the students.

69.     In 2017, the Defendants intentionally omitted their merger talks with Lasell College from their Self-Study report to NEASC, depriving current students, prospective students, and the

public of important knowledge regarding the sustainability and future of Mount Ida. This Self-Study was reviewed by Defendant Barry Brown, Ron Akie, senior leadership of Mount Ida, and the Mount Ida Board of Trustees, who voted to endorse the report in July of 2017.

70.     This Self-Study omitted information that would have caused the Massachusetts Department of Higher Education to begin talks with Mount Ida in 2017 regarding closure. Such information was contained in an external report, which was not made public.

71.     The fact that Mount Ida was teetering on the brink of insolvency was deliberately withheld from current and prospective students.

72.     The Defendants made such representations and omissions to students for the purpose of inducing the Plaintiffs and members of the Class to enroll and remain enrolled at Mount Ida.

73.     The Plaintiffs and Class members relied on the Defendants' representations to their detriment and enrolled or remained enrolled at Mount Ida.

74.     As a result of the Defendants' false statements, the Plaintiffs and members of the Class suffer and continue to suffer damages.

WHEREFORE, the Plaintiffs and the Class pray that judgment be entered against the Defendants in an amount that will fairly and adequately compensate them for their damages and such other relief as this Honorable Court may deem appropriate.

## COUNT III
### (Negligent Misrepresentation)

75.     The Plaintiffs and the Class repeat, reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 74 of this Complaint.

76.     The Defendants should have known of the financial distress of Mount Ida by as early as 2014.

77.     The Defendants, in performing their duties should have known that Mount Ida was in financial distress, but continued to hold Mount Ida out as a viable institution by:

    a.      accepting new students;

    b.      advertising substantial merit-based scholarships;

    c.      providing enrolled students with substantial merit-based scholarships;

    d.      scheduling admitted students days;

    e.      reporting to the NEASC that Mount Ida was financially sound;

    f.      failing to report to the Department of Higher Education their financial distress;

    g.      failing to properly characterize the merger talks with Lasell College;

    h.      advertising and engaging with incoming students for the 2018-2019 year; and

    i.      issuing acceptance letters to incoming students.

78.     The Defendants should have known that Mount Ida was not financially viable, yet they continued to offer enrollment up until all deadlines for admissions to other colleges had passed or were imminent.

79.     On March 23, 2018, when Mount Ida terminated merger discussions with Lasell College, Barry Brown and the other Defendants assured students that Mount Ida remained a top 30 school in the region and that they would continue to examine options moving forward to ensure the future of the students.

80.     In 2017, the Defendants intentionally omitted their merger talks with Lasell College from their Self-Study report to NEASC, depriving current students, prospective students, and the public of important knowledge regarding the sustainability and future of Mount Ida. This Self-Study was reviewed by Defendant Barry Brown, Ron Akie, senior leadership of Mount Ida, and the Mount Ida Board of Trustees, who voted to endorse the report in July of 2017.

81.     The fact that Mount Id was teetering on the brink of insolvency was negligently withheld from current and prospective students.

82.     The Defendants made such representations and omissions for the purpose of inducing the Plaintiffs and members of the Class to enroll and remain enrolled at Mount Ida.

83.     The Plaintiffs and Class members relied on the Defendants' representations to their detriment and enrolled or remained enrolled at Mount Ida.

84.     As a result of the Defendants' statements, which the Defendants should have known to be false, the Plaintiffs and Class members suffer and continue to suffer damages.

WHEREFORE, the Plaintiffs and members of the Class pray that judgment be entered against the Defendants in an amount that will fairly and adequately compensate them for their damages and such other relief as this Honorable Court may deem appropriate.

## COUNT IV
### (Fraud in the Inducement)

85.     The Plaintiffs and the Class repeat, reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 85 of this Complaint.

86.     The Defendants held Mount Ida out as a viable institution by:

        a.      accepting new students;

        b.      advertising substantial merit-based scholarships;

        c.      providing enrolled students with substantial merit-based scholarships;

        d.      scheduling admitted students days;

        e.      reporting to the NEASC that Mount Ida was financially sound;

        f.      failing to report to the Department of Higher Education their financial
                distress;

        g.      failing to properly characterize the merger talks with Lasell College;

        h.      advertising and engaging with incoming students for the 2018-2019 year;

and

     i.     issuing acceptance letters to incoming students.

87.     The Defendants should have known that Mount Ida was not financially viable, yet they continued to offer enrollment up until all deadlines for admissions to other colleges had passed or were imminent.

88.     On March 23, 2018, when Mount Ida terminated merger discussions with Lasell College, Barry Brown and the other Defendants  assured students that Mount Ida remained a top 30 school in the region and that they would continue to examine options moving forward to ensure the future of the students.

89.     In 2017, the Defendants intentionally omitted their merger talks with Lasell College from their Self-Study report to NEASC, depriving current students, prospective students, and the public of important knowledge regarding the sustainability and future of Mount Ida. This Self-Study was reviewed by Defendant Barry Brown, Ron Akie, senior leadership of Mount Ida, and the Mount Ida Board of Trustees, who voted to endorse the report in July of 2017.

90.     This Self-Study omitted information that would have caused the Department of Higher Education to begin talks with Mount Ida in 2017 regarding closure. Such information was contained in an external report, which was not made public.

91.     The fact that Mount Ida was teetering on the brink of insolvency was deliberately withheld from current and prospective students.

92.     The Defendants made such representations for the purpose of inducing the Plaintiffs and the Class to enroll and remain enrolled at Mount Ida.

93.     The Plaintiffs and members of the Class relied on the Defendants' representations and enrolled or remained enrolled at Mount Ida.

94.     As a result of the Defendants' false statements, the Plaintiffs and members of the

Class suffer and continue to suffer damages.

WHEREFORE, the Plaintiffs and the Class pray that judgment be entered against the Defendants in an amount that will fairly and adequately compensate them for their damages and such other relief as this Honorable Court may deem appropriate.

## COUNT V
### (Breach of Fiduciary Duty)

95.     The Plaintiffs and the Class repeat, reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 94 of this Complaint.

96.     Mount Ida held a unique position of influence and trust with its students. The Plaintiffs and members of the Class placed their trust in the Defendants.

97.     The Defendants had a fiduciary duty to exercise their rights and powers in good faith for the benefit of their students.

98.     As Mount Ida was the educational institution the Plaintiffs and members of the Class attended, the Plaintiffs and Class members provided the Defendants with sensitive and confidential information that is not readily available to the public or routinely provided to other institutions or individuals.

99.     Plaintiffs and the Class trusted the Defendants to keep their confidential information safe and private.

100.     Plaintiffs and the Class further trusted Mount Ida to act in their best interest and deal with them in good faith

101.     Defendants knew of the trust the Plaintiffs and Class members had in them to:

   a.     Provide Class members with an education;

   b.     Deal with Class members in good faith;

   c.     Put Class members' interests before their own; and

     d.     Help develop Class members into marketable individuals with skills consistent with their chosen major.

102.     The Defendants breached their fiduciary duty to Plaintiffs and members of the Class by:

     a.     Failing to apprise the Plaintiffs and Class members in a timely manner of the financial viability of Mount Ida;

     b.     Engaging in the sale of the Newton campus without first providing for the needs of the students;

     c.     Divulging, without authorization, the sensitive and private financial and academic information of the Plaintiffs and other members of the Class;

     d.     Rejecting a merger deal with Lasell College; and

     e.     Placing Mount Ida's needs ahead of the needs of the Plaintiffs and Class members.

WHEREFORE, the Plaintiffs and members of the Class pray that judgment be entered against the Defendants in an amount that will fairly and adequately compensate them for their damages and such other relief as this Honorable Court may deem appropriate.

## COUNT VI
### (Breach of Contract)

103.     The Plaintiffs and the Class repeat, reallege and incorporate herein by reference all the allegations contained in paragraphs 1 through 102 of this Complaint.

104.     The Plaintiffs and members of the Class each applied for admission to Mount Ida College.

105.     The Plaintiffs and members of the Class were each accepted to Mount Ida to pursue their education in their chosen field.

106.     A contract was formed between each Class member and Mount Ida.

107.     The Plaintiffs and the Class fulfilled their contractual obligations to Mount Ida by remitting tuition payments to Mount Ida for the purpose of receiving a degree in their selected field

from Mount Ida.

108.    The Plaintiffs and the Class complied with all their financial and academic obligations required up until the closure of Mount Ida.

109.    The Defendants breached their contractual duty by failing to provide the education bargained for and paid for by the Plaintiffs and the Class.

WHEREFORE, the Plaintiffs and members of the Class pray that judgment be entered against the Defendants in an amount that will fairly and adequately compensate them for their damages and such other relief as this Honorable Court may deem appropriate.

## JURY DEMAND

Plaintiffs Tristan Squeri, Madeline McClain and George O'Dea, individually and on behalf of all others similarly situated, hereby demand a trial by jury on each claim asserted or hereafter asserted in the Complaint, and on each defense asserted or hereafter asserted by any Defendant. The Plaintiffs make their demand for trial by jury to compensate them and others similarly situated for their damages sustained by the closure of Mount Ida.

WHEREFORE, the Plaintiffs and the Class demand judgment against the Defendants, statutory and treble damages as allowed by law, together with interest and costs thereon.

[SIGNATURE PAGE TO FOLLOW]

Respectfully submitted,

*/s/ Joshua N. Garick*

_____

Andra J. Hutchins, Esq. (BBO #630066)
ahutchins@kcl-law.com
Michael Tauer, Esq. (BBO #568398)
mtauer@kcl-law.com
KERSTEIN, COREN & LICHTENSTEIN, LLP
60 Walnut Street, 4th Floor
Wellesley, Massachusetts 02481
Phone: (781) 997-1600

Joshua N. Garick, Esq. (BBO #674603)
joshua@garicklaw.com
LAW OFFICES OF JOSHUA N. GARICK, P.C.
34 Salem Street Suite 202
Reading, Massachusetts 01867
Phone: (617) 600-7520

*Counsel for Plaintiffs and the Class*

Dated:  November 26, 2018