UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12438-RGS

TRISTAN SQUERI, MADELINE McCLAIN, and GEORGE O'DEA,
individually and on behalf of all others similarly situated

v.

MOUNT IDA COLLEGE, et al.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS

May 24, 2019

STEARNS, D.J.

After more than a century of operation, Mount Ida College closed suddenly at the end of the 2018 academic year. Three students, Tristan Squeri, Madeline McClain, and George O'Dea, brought this putative class action against Mount Ida College; its Board of Trustees; the Board's Chairwoman, Carmin Reiss; the President, Barry Brown; the Vice President, Chief Financial Officer, and Treasurer, Jason Potts; the Vice President of Enrollment Management and Dean of Admissions, Jeff Cutting; and the Chief Academic Officer and Provost, Ron Akie.[1] Plaintiffs, on behalf of

---

[1] Plaintiffs claim that the court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because "[t]he amount-in-controversy exceeds $5,000,000.00 and minimal diversity exists between the parties." Am. Compl. (Dkt # 12) ¶ 19. While CAFA contains a home-state

former and prospective Mount Ida students,[2] allege that defendants failed to inform them of Mount Ida's dire financial straits and shared their academic and financial profiles with the University of Massachusetts (UMass) Dartmouth without their consent. More specifically, the Amended Complaint sets out seven claims: violation of privacy under Mass. Gen. Laws ch. 214, § 1B (Count I), fraud (Count II), negligent misrepresentation (Count III), fraud in the inducement (Count IV), breach of fiduciary duty (Count V), breach of contract (Count VI), and unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A, § 9 (Count VII). Defendants move to dismiss the Amended Complaint for failure to state a claim.[3] For the reasons to be explained, defendants' motions to dismiss will be allowed.

## BACKGROUND

The facts, viewed in the light most favorable to plaintiffs as the nonmoving party, are as follows. Mount Ida College was a not-for-profit

---

exception under section 1332(d)(4)(B), Mount Ida represents that "at least one-third of its student body was typically from outside of Massachusetts." College Mem. (Dkt # 27) at 7 n.9.

[2] The putative class is of "[a]ll students and prospective students of Mount Ida College at the time Mount Ida College closed," Am. Compl. ¶ 47, purportedly consisting of over 1,400 members, id. ¶ 49.

[3] Mount Ida, the Board of Trustees, Reiss, Cutting, and Akie filed one motion to dismiss, while Brown and Potts filed separate motions of their own.

institution with a principal place of business in Foxborough, Massachusetts. Mount Ida closed its doors on May 17, 2018. According to the Amended Complaint, defendants knew that Mount Ida was struggling financially in as early as 2014, but failed to disclose its precarious fiscal state to current and prospective students. Plaintiffs point to the fact that in 2017, defendants reported to the New England Association of Schools and Colleges (NEASC) that, among other things, Mount Ida was financially stable. On February 24, 2018, Mount Ida announced that it had entered merger negotiations with Lasell College, but did not attribute the potential merger to any financial pressure. On March 21, 2018, defendants rejected the terms of the merger and, two days later, informed the Mount Ida community that they had broken off the talks with Lasell. On April 6, 2018, Brown sent a blast email to enrolled students informing them that Mount Ida had agreed to sell its Newton, Massachusetts, campus to UMass Amherst and that all current students would be guaranteed admission to UMass Dartmouth. On November 26, 2018, plaintiffs brought this lawsuit.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013), quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

### *Violation of Privacy*

Plaintiffs allege that defendants violated their privacy rights under Mass. Gen. Laws ch. 214, § 1B, by disclosing their "sensitive and private student academic data" to UMass Dartmouth without their consent.[4]  Am. Compl. ¶ 57.  "To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious." *Nelson v. Salem State Coll.*, 446 Mass. 525, 536 (2006).  "Generally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question

---

[4] Although plaintiffs also allege that this disclosure violated the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, they concede in their Opposition that the statute does not confer a private right of action.  Opp'n to College (Dkt # 36) at 12; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) ("[T]here is no question that FERPA's nondisclosure provisions fail to confer enforceable rights.").

4

of fact." *Polay v. McMahon*, 468 Mass. 379, 383 (2014).  However, "legitimate countervailing business interests . . . may render the disclosure of personal information reasonable and not actionable under the statute." *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508, 520 (1984).

Here, plaintiffs' allegations fail to establish that the disclosure of their records to UMass Dartmouth was unreasonable as a matter of law.  To the contrary, Mount Ida submitted the records to UMass Dartmouth to facilitate plaintiffs' enrollment at the successor institution.  The transfer of records, therefore, served a "legitimate purpose," *Polay*, 468 Mass. at 383, and was indisputably conducted in accordance with the Massachusetts Attorney General's May 15, 2018 guidance letter, *see* College Mem., Ex. F. at 5 (directing the transfer of student records using "an anonymized set of unique student identifiers" and noting that "UMass Amherst has agreed to become the 'institution of record'"),[5] and Massachusetts regulations, *see* 610 C.M.R. § 2.07(3)(f)(2) ("If an institution knows that it may close, . . . it shall arrange . . . to safeguard the needs of students by organizing educational

---

[5] Despite plaintiffs' objection, the court may consider this letter, along with Mount Ida's financial statements and the NEASC reports, because they are public records or are referenced in the Amended Complaint.  *See Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) ("On a motion to dismiss, . . . a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'").

transfer opportunities, and ensuring the preservation of student records[.]"). Thus, plaintiffs' privacy claim fails as a matter of law. *See Ortiz v. Examworks, Inc.*, 470 Mass. 784, 793 (2015) ("Because the examination was authorized under [Mass. Gen. Laws ch. 90,] § 34M, the invasions of privacy associated with its taking place were 'justified.'"); *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 518 (1991) ("The statute obviously was not intended to prohibit serious or substantial interferences which are reasonable or justified.").

### *Fraud, Negligent Misrepresentation, Fraud in the Inducement*

Plaintiffs next allege that defendants committed fraud, negligent misrepresentation, and fraud in the inducement by "continu[ing] to hold Mount Ida out as a viable institution" even though they knew, or should have known, that it was failing financially. Am. Compl. ¶¶ 65, 77. "To establish a claim for fraud under Massachusetts law, a plaintiff must prove that 'the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 31 (1st Cir. 2009), quoting *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458 (2002). To sustain a claim of negligent misrepresentation, a plaintiff need

6

not show that a defendant knew the statement to be false, but must show that the defendant failed "to exercise reasonable care or competence in obtaining or communicating the information." *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 20 (1998).

Defendants argue, and the court agrees, that plaintiffs fail to identify any statement that can be shown to have actually been false. According to the allegations of the Amended Complaint: (1) defendants announced, on February 24, 2018, a potential merger with Lasell College, without referencing Mount Ida's financial distress; and (2) President Brown sent an email to students, on March 23, 2018, stating that merger negotiations had broken off, but that "Mount Ida remained a top 30 school in the region," without divulging any information about the school's financial health. Am. Compl. ¶¶ 68, 79, 88. Plaintiffs do not allege that either statement was untrue.

In response, plaintiffs aver that "Mount Ida's withholding of information regarding its financial distress *is* the fraud alleged." Opp'n to College at 15 (emphasis in original); *see also Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 322 (1983) ("[A] partial disclosure or . . . a half truth . . . may be tantamount, under certain conditions, to a falsehood if there is no further expatiation."). In other words, plaintiffs assert fraud by

7

omission, which "requires both concealment of material information and a duty requiring disclosure." *Sahin v. Sahin*, 435 Mass. 396, 402 n.9 (2001). But plaintiffs fail to make out such a claim.

Mount Ida's audited financial disclosures, which plaintiffs do not allege were inaccurate, were publicly available.[6] *See* College Mem., Exs. B, C. These disclosures revealed that Mount Ida had been operating at a deficit since 2015. *Id.* at 5. Although plaintiffs allege that defendants reported to NEASC in 2017 that "Mount Ida was financially stable," Am. Compl. ¶ 26, the October 2017 NEASC report reviewed Mount Ida's finances and specifically noted that Mount Ida "has produced deficits which is making it difficult for the College to support its mission," *id.*, Ex. D at 29. And while plaintiffs allege that defendants "intentionally omitted their merger talks with Lasell College from their Self-Study report to NEASC," Am. Compl. ¶¶ 69, 80, 89, the Self-Study report also includes Mount Ida's financials and states, in particular, that "[t]he financial plan projected several years of operating deficits," Brown Mem. (Dkt # 25), Ex. 1 at 60.[7] Even assuming Mount Ida's

---

[6] Plaintiffs provide no support for their contention that "it is incredulous . . . [to] argue that college students should have done independent research to find these financial statements, interpret them, and make decisions based on them." Sur-Reply to College (Dkt # 50) at 3.

[7] Also, as Brown points out, the statement is directed at NEASC, not plaintiffs. *See* Brown Mem. at 18.

looming insolvency was material and *concealed* by defendants, plaintiffs fail to allege an actionable duty to disclose, including, as described below, any breach of a fiduciary duty.[8] *See Knapp v. Neptune Towers Assocs.*, 72 Mass. App. Ct. 502, 507 (2008) ("A duty to disclose exists where '(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.'"). Plaintiffs' claims of fraud, negligent misrepresentation, and fraud in the inducement therefore fail as a matter of law.[9]

### *Breach of Fiduciary Duty*

Plaintiffs allege that defendants breached a fiduciary duty owed to them by, again, failing to disclose Mount Ida's financial woes and by sharing

---

[8] While plaintiffs argue that the existence of the financial statements did not fulfill defendants' duty to disclose, they fail to articulate any duty of disclosure that defendants owed to them. *See* Sur-Reply to College at 3.

[9] Having so concluded, the court need not reach the issue of whether plaintiffs have satisfied the heightened pleading standard required by Fed. R. Civ. P. 9(b), *see Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004) (Under Rule 9(b), "the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation."), or whether they sufficiently allege fraud or misrepresentation "as to each defendant," *Goebel v. Schmid Bros.*, 871 F. Supp. 68, 73 (D. Mass. 1994).

their sensitive financial and academic information with UMass Dartmouth. According to the Amended Complaint, because "Mount Ida held a unique position of influence and trust with its students," defendants "had a fiduciary duty to exercise their rights and powers in good faith for the benefit of their students." Am. Compl. ¶¶ 96-97.

"A fiduciary relationship is one founded on the trust and confidence reposed by one party in the integrity and fidelity of another." *Estate of Moulton v. Puopolo*, 467 Mass. 478, 492 (2014). "Although some fiduciary relationships . . . are created by law, others arise from the nature of the parties' interactions." *Doe v. Harbor Sch., Inc.*, 446 Mass. 245, 252 (2006). Where, as here, "the fiduciary relationship is not one created by law, the existence of the relationship *ordinarily* is a mixed question of law and fact for which the party asserting the relationship bears the burden." *Id.* (emphasis added).

Plaintiffs' breach of fiduciary duty claim, however, fails as a matter of law.[10] Massachusetts courts have consistently held that no fiduciary

---

[10] The court assumes, without deciding, that plaintiffs have standing to bring a breach of fiduciary duty claim. *See Lopez v. Medford Cmty. Ctr., Inc.*, 384 Mass. 163, 167 (1981) ("Notwithstanding the Attorney General's exclusive and discretionary role as protector of the public interest in the efficient and lawful operation of charitable corporations, a private plaintiff possesses standing to assert interests in such organizations which are distinct from those of the general public."); *Harvard Climate Justice Coal.*

relationship exists between a student and his or her college.  *See Williamson v. Bernstein*, 1996 WL 1185104, at *3 (Mass. Super. Feb. 20, 1996) (rejecting "plaintiff's assertion that a fiduciary relationship existed between her and [Fitchburg State] College because she was a student there"); *Morris v. Brandeis Univ.*, 2001 WL 1470357, at *6 (Mass. Super. Sept. 4, 2001), *aff'd*, 60 Mass. App. Ct. 1119 (2004) (same).[11]  On the other hand, Massachusetts courts have at times found the existence of a valid contractual relationship between student and college, *see Morris*, 60 Mass. App. Ct. 1119 (Table), or the existence of a "special relationship" between students and their college, *see Nguyen*, 479 Mass. at 453.  A special relationship, however, is not a fiduciary one.  *See Knelman v. Middlebury Coll.*, 570 F. App'x 66, 68 (2d Cir. 2014) ("While schools, colleges, and educators assume the responsibility of

---

*v. President & Fellows of Harvard Coll.*, 90 Mass. App. Ct. 444, 446 (2016) ("Special standing applies only where 'the claim has arisen from a personal right that directly affects the individual member' of a charitable organization."), quoting *Weaver v. Wood*, 425 Mass. 270, 276 (1997).

[11] Plaintiffs do not cite any cases to the contrary, and their reliance on *Dzung Duy Nguyen v. Massachusetts Inst. of Tech.*, 479 Mass. 436 (2018), is inapposite.  In *Nguyen*, the Supreme Judicial Court (SJC) held that "a university has a special relationship with a student and a corresponding duty to take reasonable measures to prevent his or her suicide" in limited circumstances, which were not satisfied in that case.  *Id.* at 453, 458.  While the SJC noted that "[u]niversities are clearly not bystanders or strangers in regards to their students" and that they "have special relationships with their students regarding athletics and other potentially dangerous activities," *id.* at 450, it did not find that these duties amount to a fiduciary relationship.

11

educating their students, the law does not recognize the existence of a special relationship for the purposes of a breach of fiduciary duty claim."). It follows that neither Mount Ida nor, correspondingly, the remaining defendants, owed a fiduciary duty to plaintiffs. To the extent that a fiduciary duty was imposed on defendants, it was owed to Mount Ida as a corporate entity. *See Estate of Moulton*, 467 Mass. at 492 ("Directors of a corporation stand in a fiduciary relationship to that corporation and have a duty to protect its interests 'above every other obligation.'"); *Cecconi v. Cecco, Inc.*, 739 F. Supp. 41, 45 (D. Mass. 1990) ("Under Massachusetts law, it is a 'basic principle' that officers and directors owe a fiduciary duty to protect the interests of the corporation.").

***Breach of Contract***

Plaintiffs allege that in the alternative defendants breached a contract between them and Mount Ida. "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013), citing *Singarella v. City of Bos.*, 342 Mass. 385, 387 (1961). At a minimum, the plaintiff must "explain what obligations were imposed on each

of the parties by the alleged contract." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007), quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996).

According to the Amended Complaint, plaintiffs "fulfilled their contractual obligations to Mount Ida by remitting tuition payments . . . for the purpose of receiving a degree in their selected field" and "complied with all their financial and academic obligations." Am. Compl. ¶¶ 107-108. Defendants, in turn, "breached their contractual duty by failing to provide the education [that plaintiffs] bargained for and paid for." *Id.* ¶ 109.[12] These bare allegations do not suffice for a breach of contract claim. *See Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) ("Plaintiffs . . . must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep."); *Doyle*, 103 F.3d at 195 ("Conclusory statements that 'Hasbro and its executives failed to meet their contractual requirement' are insufficient to satisfy the pleading requirements.") (citation omitted). Plaintiffs fail to identify, among other things, the specific terms of the purported contract, when it was formed, and

---

[12] The Amended Complaint also specifically alleges, however, that "a contract was formed between [plaintiffs] *and Mount Ida*," not any of the other defendants. Am. Compl. ¶ 106 (emphasis added).

who negotiated it.[13]  Merely paying tuition in exchange for an education does not create a contract.[14]  Ultimately, the lack of specificity is fatal to plaintiffs' breach of contract claim.[15]

### *Mass. Gen. Laws Chapter 93A*

Finally, plaintiffs allege that defendants engaged in unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A, § 9.  According to the Amended Complaint, defendants acted unfairly and deceptively by breaching the Memorandum of Understanding with Lasell College and subsequently mischaracterizing the failed merger, by disclosing plaintiffs'

---

[13] Plaintiffs contend that, at a minimum, an implied contract was formed.  *See Jackson v. Action for Bos. Cmty. Dev., Inc.*, 403 Mass. 8, 9 (1988) ("A contract implied in fact may be found to exist from the conduct and relations of the parties."), quoting *LiDonni, Inc. v. Hart*, 355 Mass. 580, 583 (1969); *Anthes v. New York Univ.*, 2018 WL 1737540, at *13 (S.D.N.Y. Mar. 12, 2018) ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks.") (citations omitted).  Their reliance on *Anthes*, however, is misguided because there, the court found that the breach of contract claim was "foreclosed by the lack of specificity as to the agreement between the parties."  *Id.*  Here, plaintiffs similarly fail to make sufficient allegations of an implied contract.

[14] Moreover, as defendants point out, plaintiffs received a semester of education for every semester for which they paid.  College Mem. at 13 n.11.

[15] Having so concluded, the court need not address whether "the corporate veil should be pierced to confer liability" on Brown for breach of contract.  Opp'n to Brown (Dkt # 38) at 6.

14

academic and financial information to UMass Dartmouth, and by failing to inform plaintiffs about Mount Ida's financial distress.

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a).  It is true that "[a]n entity's status as a charitable corporation is not, in and of itself, dispositive of the issue" of whether Chapter 93A applies, but "[i]n most circumstances, a charitable institution will not be engaged in trade or commerce when it undertakes activities in furtherance of its core mission." *Linkage Corp. v. Trustees of Bos. Univ.*, 425 Mass. 1, 23, 26 (1997). Similarly, activities that are "purely incidental to the university's educational mission" are generally not subject to Chapter 93A. *Id.* at 25.

Plaintiffs contend that defendants engaged in "trade or commerce" by, among other things, "[o]ffering for sale a unique product" and "[c]ompeting in the marketplace with other schools" through "marketing and advertising." Am. Compl. ¶ 111.[16]  However, these actions were in furtherance of Mount Ida's core educational mission or were, at least, incidental to that mission.[17]

---

[16] The statute defines "trade" and "commerce" to "include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property." Mass. Gen. Laws ch. 93A, § 1(b).

[17] Plaintiffs also argue that "[s]uch an analysis is a factual one" inappropriate for this stage of the litigation.  Sur-Reply to College at 9.  The

15

Mount Ida did indeed compete with other schools to provide a "unique product," an education. Through its marketing, advertising, and offering of scholarships, Mount Ida was able to recruit, enroll, and educate students. Its attempted merger with Lasell College and subsequent transfer of student data to UMass Dartmouth also served to further the school's core mission of providing and advancing student education. Plaintiffs' Chapter 93A claim therefore fails because defendants were not engaged in "trade or commerce" for purposes of the statute.[18]

---

court disagrees. *See Brodsky v. New England Sch. of Law*, 617 F. Supp. 2d 1, 7 (D. Mass. 2009) ("Because the Court concludes that NESL was not engaged in 'trade or commerce' for the purpose of Chapter 93A, Brodsky's claims under that statute will be dismissed[.]"); *Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998) ("Harvard's administration of student financial aid is not 'trade or commerce' for purposes of chapter 93A.").

[18] Having dismissed all of plaintiffs' claims, the court need not reach defendants' arguments about whether the Board of Trustees is a proper party, whether individual unpaid trustees like Reiss are entitled to immunity under Mass. Gen. Laws ch. 231, § 85K and the federal Volunteer Protection Act, or whether plaintiffs have sufficiently pled allegations to support liability as to each defendant, not just Mount Ida.

## ORDER

For the foregoing reasons, defendants' motions to dismiss are ALLOWED with prejudice.[19] The clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[19] The court will not afford plaintiffs another opportunity to amend their Amended Complaint.